1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

10
11  JOSEPH ANTONETTI,                    )
                                        )
12            Plaintiff,                )
                                        )          2:13-cv-00064-RCJ-NJK
13  vs.                                 )
                                        )
    LAS VEGAS, NEVADA et al.            )              **ORDER**
14                                      )
              Defendants.               )
15  _____ )

16        Plaintiff, a prisoner in the custody of the Nevada Department of Corrections ("NDOC") at

17  High Desert State Prison ("HDSP"), has lodged a Complaint pursuant to 42 U.S.C. § 1983, attached

18  to an application to proceed *in forma pauperis*.  The matter of payment of the filing fee shall be

19  temporarily deferred.  The Court hereby screens the Complaint pursuant to 28 U.S.C. § 1915A.

20  **I.      LEGAL STANDARDS**

21        **A.      Screening Pursuant to 28 U.S.C. § 1915A**

22        Federal courts must conduct a preliminary screening in any case in which a prisoner seeks

23  redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. §

24  1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims that

25  are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary

26  relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)–(2).  Pro se

1   pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

2   699 (9th Cir. 1988).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right

3   secured by the Constitution or laws of the United States was violated; and (2) that the alleged

4   violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42,

5   48 (1988).

6       In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation

7   Reform Act of 1995 ("PLRA"), a federal court must dismiss a prisoner's claim, "if the allegation of

8   poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief

9   may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28

10  U.S.C. § 1915(e)(2).  Dismissal of a complaint for failure to state a claim upon which relief can be

11  granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same

12  standard under § 1915.  When a court dismisses a complaint under § 1915(e), the plaintiff should be

13  given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear

14  from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v.*

15  *United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

16      Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that

17  fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests

18  the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

19  1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim,

20  dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally

21  cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

22  555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all

23  material allegations as true and construe them in the light most favorable to the plaintiff. *See NL*

24  *Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to

25  accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

26  unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

2

1    A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff

2    must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct.

3    1937, 1949 (2009) (citations omitted).

4         "Generally, a district court may not consider any material beyond the pleadings in ruling on a

5    Rule 12(b)(6) motion.  However, material which is properly submitted as part of the complaint may

6    be considered." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir.

7    1990) (citation omitted).  Similarly, "documents whose contents are alleged in a complaint and

8    whose authenticity no party questions, but which are not physically attached to the pleading, may be

9    considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss

10   into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

11   Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public

12   record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

13        Finally, all or part of a complaint filed by a prisoner may be dismissed sua sponte if the

14   prisoner's claims lack an arguable basis in law or in fact.  This includes claims based on legal

15   conclusions that are untenable, e.g., claims against defendants who are immune from suit or claims

16   of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful

17   factual allegations, e.g., fantastic or delusional scenarios. *See Neitzke v. Williams*, 490 U.S. 319,

18   327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

19        **B.    Exhaustion**

20        "The Prison Litigation Reform Act requires that a prisoner exhaust available administrative

21   remedies before bringing a federal action concerning prison conditions." *Griffin v. Arpaio*, 557 F.3d

22   1117, 1119 (9th Cir. 2009) (citing 42 U.S.C. § 1997e(a)).  A prison system's own requirements

23   "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).  The Nevada

24   Department of Corrections ("NDOC") utilizes a three-stage grievance procedure: an informal

25   grievance, a first level grievance, and a second level grievance. *See* NDOC Admin. Reg. 740 (Inmate

26   Grievance Procedure), *available at* http://www.doc.nv.gov/ar/pdf/AR740.pdf.

1    Although once within the discretion of the district court, the exhaustion of administrative

2    remedies is now mandatory. *Booth v. C.O. Churner*, 532 U.S. 731 (2001).  Those remedies "need not

3    meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter v. Nussle*, 534 U.S.

4    516, 524 (2002) (citing *Booth*, 532 U.S. at 739–40 n.5).  Even when the prisoner seeks remedies not

5    available in the administrative proceedings, notably money damages, exhaustion is still required

6    prior to filing suit. *Booth*, 532 U.S. at 741.  The Supreme Court has strictly construed section

7    1997e(a). *Id.* at 741 n.6 ("We will not read futility or other exceptions into statutory exhaustion

8    requirements where Congress has provided otherwise.").

9    The failure to exhaust administrative remedies as required by § 1997e(a) is an affirmative

10   defense, and a defendant bears the burden of raising and proving that the plaintiff has not exhausted.

11   *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1117 n.9 (9th Cir. 2003),

12   *cert denied*, 540 U.S. 810 (2003).  However, if the affirmative defense of non-exhaustion appears on

13   the face of the complaint, a defendant need not provide evidence showing non-exhaustion. *See*

14   *Jones*, 549 U.S. at 215.  Failure to exhaust is treated as a matter in abatement, not going to the merits

15   of the claim, and is properly raised in an unenumerated Rule 12(b) motion. *Wyatt*, 3154 F.3d at 1119.

16   The court may look beyond the pleadings and decide disputed issues of fact without converting the

17   motion into one for summary judgment. *Id.*  "[I]f the district court concludes that the prisoner has not

18   exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Id.*

19   at 1119–20.

20   For the purposes of screening, the Court will assume all claims have been exhausted.  The

21   Court will not more closely examine the issue unless some claims survive screening and Defendants

22   file motions alleging non-exhaustion of the surviving claims.

23   **III.    ANALYSIS**

24   **A.    Count I**

25   Plaintiff alleges he was transferred from HDSP to the Clark County Detention Center

26   ("CCDC") without his legal materials in retaliation for grievances and lawsuits that he has filed

1    against NDOC personnel.  While at CCDC he was denied "proper" law library access, along with

2    pens, paper, postage, and envelopes.  As a result he was unable to file certain motions in cases that

3    he is litigating.  Plaintiff was only allowed out of his cell one time during business hours to attempt

4    to contact family members and his attorney; otherwise he was only allowed out of his cell in the

5    middle of the night.

6          Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S.

7    343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *limited in part on other grounds by*

8    *Lewis*, 518 U.S. at 354; *Ching v. Lewis*, 895 F.2d 608, 609 (9th Cir. 1990).  This right "requires

9    prison authorities to assist inmates in the preparation and filing of meaningful legal papers by

10   providing prisoners with adequate law libraries or adequate assistance from persons trained in the

11   law." *Bounds*, 430 U.S. at 828; *see also Madrid v. Gomez*, 190 F.3d 990, 995 (9th Cir. 1999).  The

12   right, however, "guarantees no particular methodology but rather the conferral of a capability – the

13   capability of bringing contemplated challenges to sentences or conditions of confinement before the

14   courts . . . . [It is this capability] rather than the capability of turning pages in a law library, that is the

15   touchstone" of the right of access to the courts. *Lewis*, 518 U.S. at 356–57.  Prison officials may

16   select the best method to ensure that prisoners will have the capability to file suit. *See id.* at 356.

17   Prisons "might replace libraries with some minimal access to legal advice and a system of court-

18   provided forms . . . that asked the inmates to provide only the facts and not to attempt any legal

19   analysis." *Id*. at 352.

20         To establish a violation of the right of access to the courts, a prisoner must establish that he

21   or she has suffered an actual injury, a jurisdictional requirement that flows from the standing

22   doctrine and may not be waived. *See Lewis*, 518 U.S. at 349; *Madrid*, 190 F.3d at 996.  An "actual

23   injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to

24   meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348 (citation and internal quotations

25   omitted); *see also Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (explaining that "[f]ailure

26   to show that  a 'non-frivolous legal claim ha[s] been frustrated' is fatal" to a claim for denial of

5

1    access to legal materials) (citing *Lewis*, 518 U.S. at 353 & n.4); *Madrid*, 190 F.3d at 996.  Delays in

2    providing legal materials or assistance that result in actual injury are "not of constitutional

3    significance" if "they are the product of prison regulations reasonably related to legitimate

4    penological interests." *Lewis*, 518 U.S. at 362.  The right of access to the courts is limited to non-

5    frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. *See Lewis*, 518

6    U.S. at 353 n.3 & 354–55; *Simmons v. Sacramento Cnty. Superior Court*, 318 F.3d 1156, 1159–60

7    (9th Cir. 2003) (explaining that "a prisoner has no constitutional right of access to the courts to

8    litigate an unrelated civil claim."); *Madrid*, 190 F.3d at 995.

9            "A prisoner suing prison officials under 1983 for retaliation must allege that he was retaliated

10   against for exercising his constitutional rights and that the retaliatory action does not advance

11   legitimate penological goals, such as preserving institutional order and discipline." *Barnett v.*

12   *Centoni*, 31 F.3d 813, 815–16 (9th Cir. 1994) (per curiam).  Such claims must be evaluated in the

13   light of the deference that must be accorded to prison officials. *See Pratt*, 65 F.3d at 807.   The

14   prisoner must submit evidence, either direct or circumstantial, to establish a link between the

15   exercise of constitutional rights and the allegedly retaliatory action. *Compare Pratt*, 65 F.3d at

16   807(finding insufficient evidence), *with Valandingham v. Bojorquez*, 866 F.2d 1135, 1138–39 (9th

17   Cir. 1989) (finding sufficient evidence).  Timing of the events surrounding the alleged retaliation

18   may constitute circumstantial evidence of retaliatory intent. *See Soranno's Gasco, Inc. v. Morgan*,

19   874 F.2d 1310, 1316 (9th Cir. 1989).  Finally, the prisoner must demonstrate that his First

20   Amendment rights were actually chilled by the alleged retaliatory action. *See Resnick v. Hayes*, 213

21   F.3d 443, 449 (9th Cir. 2000).

22           The allegations in Count 1 implicate plaintiff's First Amendment rights to access to the

23   courts and against retaliation.  However, Plaintiff has failed to identify specifically which Defendants

24   took what actions that deprived him of his constitutional rights.  Section 1983 requires a connection

25   between the actions of a defendant and the deprivation alleged to have been suffered by a plaintiff.

26   *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  "A

person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  Because Plaintiff has failed to link the named Defendants with any affirmative act or omission, Count 1 must be dismissed, with leave to amend.

**B.     Count II**

Plaintiff alleges he suffered six nights of sleep deprivation and headaches in segregation at the CCDC because the cells there are equipped with bright night lights.  Defendants Las Vegas, Clark County, and Sheriff Gillespie allegedly allow this "policy of torture" in violation of Plaintiff's Eight Amendment rights.

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  The "deliberate indifference" standard contains conjunctive objective and subjective prongs.  First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. *Id.* at 837.  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." *Id.* "[M]unicipalities and other local government units . . . [are] among those persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  Counties are also persons for purposes of § 1983, *see Miranda v. Clark County, Nev.*, 319 F.3d 465, 469 (9th Cir. 2003) (en banc), as are municipal government officials, *see Monell*, 436 U.S. at 691 n.55.  In order to find a municipality liable, a plaintiff must demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local government unit, because municipal liability must rest on the actions of the municipality itself, not upon a respondeat superior theory. *See Bd. Of Cnty.*

1   *Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *City of Canton, Ohio v. Harris*, 489 U.S. 378 385

2   1989); *Monell*, 436 U.S. at 690–91.

3          The Court dismisses Count II, with leave to amend.  CCDC, like any county detention facility

4   is a busy, transient facility requiring sufficient lighting, even during nighttime hours, for legitimate

5   security purposes.  And Plaintiff alleges the subjective prong of the deliberate indifference standard

6   only in conclusory fashion.

7          **C.      Count III**

8          Plaintiff alleges that his Eighth Amendment rights were violated because there is no outdoor

9   exercise at CCDC; the "rec yard" is a room with "metal screen sort of window[s]."

10          "Deprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined

11   to continuous and long-term segregation." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (citing

12   *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)), *amended by* 135 F.3d 1318 (9th Cir. 1998).

13   "[A] temporary denial of outdoor exercise with no medical effects[, however,] is not a substantial

14   deprivation." *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997).  Prison officials may restrict

15   outdoor exercise on the basis of weather, unusual circumstances, or disciplinary needs. *See Spain*,

16   600 F.2d at 199.  "The cost or inconvenience of providing adequate [exercise] facilities [, however,]

17   is not a defense to the imposition of cruel punishment."  *Id*. at 200.

18          Plaintiff has not alleged the amount of time that he was denied outdoor recreation at CCDC.

19   The Court dismisses Count III with leave to amend.

20          **D.      Count IV**

21          Plaintiff alleges he was denied kosher meals at CCDC.  Defendants Bonnie Polley, Sgt.

22   #5924T, Sgt. #469H, Sgt. Johnson, Capt. Baker, and Sheriff Gillespie apparently denied his kites and

23   grievances.  He refused to eat for three days but then ate non-kosher meals, violating his religious

24   beliefs and causing him great emotional distress and even nausea, vomiting, and diarrhea.

25   He alleges violations of his Free Exercise rights.

26          The First Amendment provides, *inter alia*, that Congress shall make no law prohibiting the

8

free exercise of religion. U.S. Const., amend. I.  Prisoners retain their First Amendment rights, including the right to the free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  Limitations on a prisoner's free exercise rights arise from both the fact of incarceration and from valid penological objectives. *Id.*; *McElyea v. Babbit*, 833 F. 2d 196, 197 (9th Cir. 1987).  Prison regulations alleged to infringe on the religious exercise right must be evaluated under the "reasonableness" test set forth in *Turner v. Safley*, 482 U.S. 78, 89–91 (1987). *O'Lone*, 382 U.S. at 349; *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997) (recognizing that *City of Boerne v. P.F. Flores*, 521 U.S. 507 (1997) invalidated the Religious Freedom Restoration Act with respect to the states and restored *Turner*'s "reasonableness test" as the applicable standard in free exercise challenges brought by prison inmates).  In determining the reasonableness of a challenged restriction on free exercise rights, a court considers four factors: (1) whether there is a valid, rational connection between the prison regulation and the legitimate, neutral government interest put forward to justify it; (2) whether alternative means of exercising the right remain open; (3) the impact accommodation of the asserted right will have on guards, other inmates, and the allocation of prison resources; and (4) the absence of readily available alternatives. *Allen v. Toombs*, 827 F.2d 563, 567 (9th Cir. 1987) (citing *Turner v. Safley*, 482 U.S. at 89–91).

The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993).  By way of example, "[t]he fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."  *Id.* at 1456 (citation and internal quotations omitted).

Plaintiff alleges he wrote to the appropriate official, as instructed, and that he grieved the issue when kosher meals were still not provided.  As a result, he alleges he went twenty-seven (27) days without kosher meals and at least three (3) days without eating at all, eventually giving in to his hunger and violating his religious beliefs by eating to avoid malnutrition.  The Court will not dismiss these claims.

### E.      Count V

Plaintiff alleges he submitted medical kites because he suffered headaches, nausea, vomiting, diarrhea and toothaches/cavities.  While CCDC policy is that an inmate should be seen within three days of a medical complaint, Plaintiff was not seen for nine days.  He alleges violations of his Eight Amendment rights.

Before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980), citing *Estelle*, 429 U.S. at 105–06.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. at 106.  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).  A prisoner's disagreement with diagnosis or treatment does not support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  Delay of, or interference with, medical treatment can also amount to deliberate indifference. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  Where the prisoner alleges that delay of medical treatment evinces deliberate indifference, however, the prisoner must show that the delay led to further injury. *See Hallett*, 296 F.3d at 745–46.

Here, Plaintiff does not identify specific Defendants that were deliberately indifferent to his specific, serious medical needs.  Nor does he allege that any delay led to further injury.  Failure to follow an institutional policy does not necessarily implicate an inmate's constitutional rights.  Accordingly, Count V is dismissed, with leave to amend.

### F.      Counts VI and VII

The allegations in Count VI–VII are duplicative of Counts I–V and are therefore dismissed, without leave to amend.

### G.      Count VIII

First, Plaintiff alleges that an officer broke his headphones.  Plaintiff was charged with misuse of property, but the charges were dismissed.  Plaintiff claims that this deprivation of his property violates his constitutional rights.  However, the wrongful, intentional deprivation of an inmate's property by prison employees does not violate the Due Process Clause, provided that adequate state post-deprivation remedies are available. *Hudson v. Palmer*, 468 U.S. 517, 533–34 (1984).  Nevada law provides for civil actions for the wrongful deprivation of property by state officials. *See* Nev. Rev. Stat. §§ 41 .031, 41.0322.  Plaintiff may seek redress through the state system, but he cannot sue in federal court on the claim that the state deprived him of property without due process of the law before he has been denied relief through the available procedures.  Accordingly, this claim is dismissed, without leave to amend.

Next, plaintiff alleges that the rate NDOC charges for telephone use ($5.00 for a local call) is an extreme hardship.  "Prisoners have a First Amendment right to telephone access, subject to reasonable security limitations." *Kennan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (citing *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)).  There is, however, "no authority for the proposition that prisoners are entitled to a specific rate for their telephone calls." *Johnson v. State of Cal*., 207 F.3d 650, 656 (9th Cir. 2000).  This claim, as with the claim at issue in *Johnson*, alleges no facts from which one could conclude that the rate charged is so exorbitant as to deprive Plaintiff of phone access altogether.  Plaintiff also alleges, however, that due to lack of maintenance and a "faulty system" that prison personnel have failed to rectify, he has been charged for calls that disconnect and charged a second time when he tried to place the call again.  Plaintiff also alleges that charges have been deducted from his inmate account for medical services that he never received.

The Fourteenth Amendment prevents a state from depriving a person of life, liberty, or property without due process of law. U.S. Const. amend. XIV.  Due process protections apply to existing property or property to which an individual is entitled by law. *See Orloff v. Cleland*, 708 F.2d 372, 377 (9th Cir. 1983).  A prisoner has a protected property interest in the funds in his inmate

1  trust account. *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir.1985).  Plaintiff's allegations regarding

2  unfounded telephone and medical charges may implicate his Fourteenth Amendment rights, yet once

3  again, he fails to identify specific Defendants or to allege how they acted or failed to act to deprive

4  him of his constitutional rights.  Count VIII is dismissed, with leave to amend.

5      **H.    Count IX**

6        Plaintiff alleges he was charged with assault and battery of another inmate.  Defendants

7  Ragone and Crunden denied his requests for a law clerk, to review the evidence, and to call

8  witnesses at his disciplinary hearing.  Plaintiff was found guilty and sanctioned with sixty (60) days

9  disciplinary segregation and attendant loss of canteen privileges.

10        "Prisoners . . . may not be deprived of life, liberty or property without due process of law . .

11  . . [T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these

12  rights are not subject to restrictions imposed by the nature of the regime to which they have been

13  lawfully committed . . . ." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  When a prisoner faces

14  disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least

15  twenty-four hours before the disciplinary hearing that includes the charges, a description of the

16  evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity

17  to present documentary evidence and call witnesses, unless calling witnesses would interfere with

18  institutional security; and (3) legal assistance where the charges are complex or the inmate is

19  illiterate. *See id.* at 563–70.  However, *Wolff*-type protections only apply if the result of the hearing is

20  a punishment that withdraws a constitutionally cognizable liberty interest, as defined in *Sandin v.

21  Connor*, 515 U.S. 472 (1995).

22        This Court has addressed the *Sandin* standard in scores, if not hundreds, of prisoner

23  segregation cases.  Under *Sandin*, segregation, without more, does not constitute a deprivation of a

24  constitutionally cognizable liberty interest. *E.g.*, *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1997);

25  *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).  Although *Sandin* concerned

26  administrative segregation, there is no basis to find that *Sandin*'s holding applies with any less force

1   to disciplinary segregation, because the State's motivation, although relevant in equal protection

2   cases, is not relevant to an inquiry that is necessary and antecedent to a due process analysis: whether

3   the result of the segregation deprives the prisoner of a constitutionally cognizable liberty interest.  If

4   the answer to that antecedent question is "no," then no procedures at all are constitutionally "due,"

5   and a due process claim necessarily fails.  Just as a prison cannot avoid the strictures of the Due

6   Process Clause simply by labeling segregation as "protective" or "administrative," a prisoner cannot

7   invoke the Clause simply by characterizing segregation as "disciplinary" or "punitive."  No matter

8   how a prisoner's segregation (or other deprivation) is labeled by the prison or characterized by the

9   prisoner, a court must examine the substance of the alleged deprivation and determine if it

10  constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of

11  prison life" before it determines which procedural protections must apply. *Sandin*, 515 U.S. at 484.

12          Showing that a deprivation is "atypical" with respect to the hardships of ordinary prison life

13  is difficult, because prison conditions are typically harsh.[1]  Prisoners are by definition segregated

14  from the public at large, and they are typically segregated even from other prisoners for the vast

15  majority of any given day, except for perhaps one other cell mate.  Indeed, the Court of Appeals has

16  noted that "it would be difficult (we do not say impossible) to make disciplinary segregation

17  sufficiently more restrictive than the conditions of the general population . . . to count as an atypical

18  and significant deprivation of liberty[.]" *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003)

19  (Aldisert, J.) (quoting *Wagner v. Hanks*, 128 F.3d 1173, 1174 (7th Cir. 1997)) (alterations in

20  original).  The Court of Appeals looks at three factors under *Sandin*: "(1) whether the conditions of

21

22          [1]The Court notes that if the conditions in a given prison are extreme as a general matter, no
23  cognizable liberty interest will be implicated under *Sandin* upon segregation within the prison unless the
    conditions in segregation are atypically extreme with respect to the already extreme conditions in the
24  general population.  Although a prisoner suffering extreme conditions may be able to avail himself of
    the Eighth Amendment directly in such a case—regardless of whether he is housed in the general
25  population or in segregation—the segregated prisoner cannot be said to have been deprived of any liberty
    interest with respect to ordinary life in the general population if he is not significantly worse off in
26  segregation.  Any liberty taken from a prisoner in such a case is taken the moment the prisoner is
    sentenced or assigned to the prison at issue, not by the prisoner's administrative or disciplinary
    segregation within the prison.

13

1   confinement mirrored those conditions imposed upon inmates in analogous discretionary

2   confinement settings, namely administrative segregation and protective custody[;] (2) the duration

3   and intensity of the conditions of confinement; and (3) whether the change in confinement would

4   inevitably affect the duration of [the prisoner's] sentence." *See Chappell v. Mandeville*, 706 F.3d

5   1052, 1064–65 (9th Cir. 2013) (second alteration in original; internal quotation marks omitted).  In

6   other words, if the conditions in segregation are worse that those a prisoner will typically encounter

7   in prison, the Court must still consider whether the conditions are extreme enough in nature and

8   duration or whether they will necessarily affect the length of a prisoner's sentence.  Segregation may

9   lead to a cognizable deprivation of liberty, for example, if the conditions of segregation, although not

10  in themselves harsh enough to implicate a cognizable liberty interest, result in the deprivation of

11  some other interest particular to the aggrieved prisoner. *Serrano*, 345 F.3d at 1074, 1078–79 (finding

12  that segregation of a partially paralyzed plaintiff for almost three months to an area where he could

13  not use the wheelchair he was permitted in the general population, such that he could not shower and

14  had difficulty using the bathroom and the bed, implicated a cognizable liberty interest).

15          Plaintiff in the present case makes no claim of deprivation other than the pure fact of

16  segregation, the conditions of which he does not even allege.  Unfortunately, this pattern of

17  insufficient allegations in prisoner segregation cases is typical.  The Court dismisses the due process

18  claim, with leave to amend.  Plaintiff must allege facts indicating the conditions in segregation were

19  atypically harsh compared to the conditions in the prison within which he is housed, or that the

20  segregation necessarily increased the length of his sentence.  He has not yet alleged either.

21      **I.      Immunity**

22          Finally, Plaintiff names several Defendants who are immune from this suit based upon either

23  absolute or qualified immunity.  All members of the Nevada judiciary (Nevada Supreme Court, 8th

24  Judicial District Court, and District Judge Leavitt) are absolutely immune from suit based upon their

25  judicial actions. *See, e.g.*, *Demoran v. Will*, 781 F.2d 155, 156 (9th Cir. 1986).  The Governor and

26  the Nevada Legislature enjoy qualified immunity from civil damages unless their conduct violates

14

1  "clearly established statutory or constitutional rights of which a reasonable person would have

2  known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In *Saucier v. Katz*, the Supreme Court

3  provided guidance on the application of qualified immunity, explaining that officials are entitled to

4  qualified immunity unless: (1) plaintiff alleges facts that show a constitutional violation; and (2) it

5  was clearly established at the time of the alleged violation that the conduct was unconstitutional. 533

6  U.S. 194, 201 (2001).  With respect to the district attorneys, state prosecutors are entitled to absolute

7  prosecutorial immunity for acts taken in their official capacity. *See, e.g.*, *Kalina v. Fletcher*, 522 U.S.

8  118, 123-25 (1997).  Plaintiff has made no allegations implicating the Governor, the Legislature, or

9  any district attorneys from which they would not be protected by qualified or absolute immunity.

10  With respect to NDOC, governmental agencies that are arms of the state are not persons for purposes

11  of § 1983. *See, e.g.*, *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997).  Accordingly,

12  NDOC is dismissed from this action.  Nor is CCDC itself a person for the purposes of § 1983.  And

13  finally, Plaintiff sets forth no allegations against individual Defendants James Cox, Dwight Neven,

14  Isidro Baca, E.K. McDaniels, Miss Nash, Mr. Fletcher, Dereed, C. Schardin, Dr. Jennings, L.C.

15  Adams, John Donahue, or S.L. Foster.

16         In summary, Count IV may proceed as set forth in the Complaint.  Counts VI and VII, as well

17  as the portion of Count VIII regarding the broken headphones, are dismissed, without leave to

18  amend.  Counts I–III, V, IX, and the remainder of Count VIII are dismissed, with leave to amend.  If

19  plaintiff elects to proceed in this action by filing an amended complaint, he should specifically

20  identify each Defendant to the best of his ability, clarify what constitutional right he believes each

21  Defendant has violated and support each claim with factual allegations about each Defendant's

22  actions.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or

23  connection between a defendant's actions and the claimed deprivation. *Rizzo v. Goode*, 423 U.S. 362

24  (1976).  Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly.

25  *See Swierkeiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); Fed. R. Civ. P. 8(a)(2).  Plaintiff does

26  not have leave to add additional claims at this time, but only to amend the claims the Court has

1   identified.

2       Plaintiff is informed that the Court cannot refer to a prior pleading in order to make an

3   amended complaint complete.  Local Rule 15-1 requires that an amended complaint be complete in

4   itself without reference to any prior pleading.  This is because, as a general rule, an amended

5   complaint supersedes the original complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).

6   Once Plaintiff files an amended complaint, the original pleading no longer serves any function in the

7   case.  Therefore, in an amended complaint, as in an original complaint, each claim and the

8   involvement of each Defendant must be sufficiently alleged.  If Plaintiff chooses not to file an

9   amended complaint, this action will proceed as set forth in this order.

10       The court grants Plaintiff's motion for enlarged extended complaint (ECF No. 2) for the

11   purposes of this original Complaint.  However, Plaintiff is strongly cautioned, if he chooses to file an

12   amended complaint, that the rules require "a *short and plain* statement of the claim showing that the

13   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).[2]

14       Plaintiff has also filed a motion for order for production of perishable discovery (ECF No. 3).

15   Plaintiff seeks video footage from the CCDC of an altercation between Plaintiff and another detainee

16   that gives rise to some of Plaintiff's claims in this action.  This motion must be denied as premature;

17   defendants have not yet been served with a Complaint in this matter, and no scheduling order, which

18   will guide the parties as to discovery and other matters once this litigation proceeds, has yet been

19   entered.

20   ///

21   ///

22   ///

23   ————————————

24       [2] *See also* Information and Instructions for Filing a Civil Rights Complaint Pursuant to 42 U.S.C.
     § 1983 in the United States District Court for the District of Nevada: "The form provides three (3) pages
25   for alleging three (3) counts.  If you are alleging more than three counts, use the additional space on the
     last page, and if that is not enough, then attach an additional page for each additional count (so that there
26   is only one count per page). . . . Remember, you are limited to a total of two (2) additional pages for Part
     B and C; if you have more than two (2) additional pages, you will also need to file a motion seeking
     permission from the court to file the complaint."

**CONCLUSION**

IT IS HEREBY ORDERED that the Clerk shall DETACH and FILE Plaintiff's Complaint (ECF No. 1-1).

IT IS FURTHER ORDERED that the following claim set forth in Plaintiff's Complaint MAY PROCEED: Count IV against Defendants Polley, Sgt. J #5924T, Sgt. A #469H, Sgt. Johnson, Capt. Baker, and Sheriff Gillespie.

IT IS FURTHER ORDERED that Counts VI, VII, and the deprivation of property (headphones) claim set forth in Count VIII are DISMISSED, without leave to amend.

IT IS FURTHER ORDERED that all claims against the following Defendants are DISMISSED: Clark County Detention Center, Brian Sandoval, Nevada Board of Legislature, James Cox, Dwight Neven, Isidro Baca, Nevada Department of Corrections, E.K. McDaniels, District Attorney's, Steven Wolfson, Nevada Supreme Court, Michelle Leavitt, 8th Judicial District Court, Miss Nash, Mr. Fletcher, Dereed, C. Schardin, Dr. Jennings, L.C. Adams, John Donahue, S.L. Foster, and Patrick Burns.  These Defendants are dismissed from this action.

IT IS FURTHER ORDERED that the following counts set forth in Plaintiff's Complaint are DISMISSED, with leave to amend as set forth in this Order: Counts I, II, III, V, IX, and Count VIII (except for the deprivation of property (headphones) claim).

IT IS FURTHER ORDERED that Plaintiff will have thirty (30) days from the date that this order is entered to file an amended complaint if he believes he can correct the noted deficiencies. The amended complaint must be a complete document in and of itself, and will supersede the original complaint in its entirety.  Any allegations, parties, or requests for relief from prior papers that are not carried forward in the amended complaint will no longer be before the court.

IT IS FURTHER ORDERED that Plaintiff shall clearly title any amended complaint as such by placing the words "FIRST AMENDED" immediately above "Civil Rights Complaint Pursuant to 42 U.S.C. § 1983" on page 1 in the caption, and Plaintiff shall place the case number, 2:13-CV-00064-RCJ-NJK, above the words "FIRST AMENDED"in the space for "Case No."

1    IT IS FURTHER ORDERED that if Plaintiff elects to not file an amended complaint in this

2    action, this case shall proceed as set forth in this order.

3    IT IS FURTHER ORDERED that the Clerk shall send to Plaintiff a blank section 1983 civil

4    rights complaint form with instructions along with one copy of the original Complaint.

5    IT IS FURTHER ORDERED that Plaintiff's Motion for Enlarged Extended Complaint (ECF

6    No. 2) is GRANTED nunc pro tunc.

7    IT IS FURTHER ORDERED that plaintiff's Motion for Order for Production of Perishable

8    Discovery (ECF No. 3) is DENIED.

9    Dated this 30th day of August, 2013.

10

11    _____

12                      ROBERT C. JONES
                      United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26